PEOPLE ex rel. STILLWELL v. GUNNER et al.

(Supreme Court, Appellate Division, First Department. February 7, 1908.)

1. CERTIORARI—GROUNDS—PROCEEDINGS OF PORT WARDENS.
Consolidation Act, Laws 1882, p. 513, c. 410, § 2126, authorizes the board of port wardens of the port of New York to establish such rules, not inconsistent with the state or federal Constitution, for the government of pilots, as the board may deem proper; and section 2125 provides that the board, after a hearing, may fine any pilot for a violation of the rules. Code Civ. Proc. § 2120, provides that certiorari may be employed to review the determination of a board or officer. By section 2140 the determina-

tion which may be reviewed relates entirely to particular determinations. *Held,* that while the action of the board in attempting to enforce a rule which it had made, but which was in excess of the authority conferred, might be reviewed by certiorari, the writ could not be employed to review the mere action of the board in adopting a rule.

2. PILOTS—REGULATION OF OCCUPATION.

The rule adopted by the board of port wardens of the port of New York for the government of Hell Gate pilots, providing that the business of pilotage shall be carried on by a single vessel, was not objectionable on the ground that there was no legal authority for the rule that the business should be carried on by one boat, because of Consolidation Act, Laws 1882, p. 513, c. 410, § 2125, as amended by Laws 1903, p. 1177, c. 513, requires that apprentices are to serve one year on the station boat, and another year with a pilot on duty, as such statute does not require more than one boat.

3. SAME.

A rule requiring all inward-bound vessels to be spoken and boarded by pilots from the station boat, which should be situated within a radius of three miles to the eastward of Execution Rock, was not illegal.

Certiorari by the people, on the relation of Isaac W. Stillwell, to review the action of John H. Gunner and others, as the board of port wardens of the city of New York, in adopting and enforcing certain rules governing Hell Gate pilots. Writ dismissed.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, and HOUGHTON, JJ.

John F. Foley, for relator.
James A. Donnelly, Deputy Atty. Gen., for defendants.

INGRAHAM, J. By section 2126 of the consolidation act (chapter 410, p. 513, of the Laws of 1882) the board of port wardens of the port of New York were authorized to make and establish "such rules, orders and regulations not inconsistent with the Constitution of this state or of the United States or the provisions of this title for the better government of said pilots, and for such fines and penalties for the breach thereof as the said board of wardens may from time to time direct, and to revoke, annul and alter the same as often as they may deem proper and expedient." By section 2124 of the act the appointment of Hell Gate pilots was provided for, and the pilots appointed were to hold their office during good behavior. By section 2125 these pilots were to be appointed by the Governor, with the consent of the Senate, from a list of persons recommended by the board of port wardens of the port of New York. By section 2127 of the act the board of port wardens were given cognizance of all complaints made against said pilots for official misconduct. By section 2135 it was provided that the board of port wardens, after a hearing, may fine such pilot for any misconduct in a sum not exceeding $25, or suspend him for any term said board may think proper. Section 2125 was amended by chapter 513, p. 1177, of the Laws of 1903, but such amendment is not material. On February 27, 1907, the board of port wardens made certain amendments to their rules and regulations, and by this writ of certiorari the relator attempts to review the action of the board in adopting these rules and regulations; relator claiming that some of these rules are in

violation of the Constitution, and are inconsistent with the Constitution and laws of this state or of the United States.

I do not think that the action of the board of port wardens in adopting these rules can be reviewed by certiorari. The making of rules, orders, and regulations was confided to the discretion of the board of port wardens. The act was not in any sense judicial, but was an ordinary administrative or executive act, vested by the Legislature in this board, charged with the government of pilots. If the board, in attempting to enforce a rule which it had made, but which was in excess of the authority conferred upon it by the Legislature, fined or convicted a pilot, its action could be reviewed by certiorari; but the making of the rule is not a judicial act. The writ of certiorari, as authorized by section 2120 of the Code of Civil Procedure, is issued "to review the determination of a board or officer"; and by section 2140 of the Code of Civil procedure the determinations which can be reviewed by the court relate entirely to particular determinations of a board or officer. It speaks of the "parties thereto" and competent proof of all the facts necessary to be proved in order to authorize the making of the determination, and whether there was upon all the evidence such a preponderance of proof "against the existence of any of these facts that the verdict of the jury confirming the existence thereof rendered an action in the Supreme Court triable by jury would be set aside by the court as against the weight of evidence." And section 2141, in speaking of the final order, provides that the court may make a final order annulling or confirming, wholly or partly, or modifying, the determination reviewed therein as to any and all the parties. It is a familiar rule, which has always been applied, that to justify the review of an action of a board or officer by a writ of certiorari the action sought to be reviewed must be in its nature a judicial determination in a particular case, which affects the rights of the relator suing out the writ. It is not applicable to a review of the exercise of the discretion of boards or officers vested by law with discretion in relation to a particular subject-matter, even though the act sought to be reviewed be in excess of the power granted to the board or officer.

The authority under which the defendants acted is conferred by section 2126 of the consolidation act, which gives them the "power and authority to make and establish such rules, orders and regulations not inconsistent with the Constitution and laws of this state or of the United States, or of the provisions of this title for the better government of said pilots." In the exercise of this power there is nothing judicial. If such proceeding should be countenanced, every administrative or executive act of state boards or officers and every legislative act of the Legislature could be reviewed by the courts, a proposition which would involve the interference of the judicial power with the executive and legislative power of the state. The impropriety of attempting such a review by this writ is shown by the points of the relator. He asks to have a determination as to whether or not these amended rules, orders, and regulations had ever been adopted by the board. If the board had not adopted them, there were no official acts to review, and a failure of the board to adopt the rules cannot be the basis of a writ to review the action of the board in adopting them. If

we could review the acts of the defendants in adopting these rules, the objections are without merit.

The relator objects to the first rule, which provides that the business of pilotage is to be carried on by a single deck sailing vessel of not less than 25 tons net, which is to be in active commission at all times on the eastern stations, and to be known as the "Hell Gate pilot station boat." The objection is that there is no legal authority for the rule that the business should be carried on by one pilot boat, because of section 2125 of the consolidation act (as amended by chapter 513, p. 1177, of the Laws of 1903), which necessarily requires more than one boat, as by that section apprentices are to serve one year on a station boat and the other year with a pilot on duty, and there must therefore be two boats. It is difficult to understand this objection. The pilot boat is one boat, and the pilot is on duty when he is upon vessels that he is piloting.

It is also claimed that the rules are illegal and in derogation of the rights of the relator, as it places a limit to the distance eastward of Execution Rock from which the relator might speak and board a vessel. The rule requires that all inward-bound vessels shall be spoken and boarded by pilots from the station boat, which is to be situated within a radius of three miles to the eastward of Execution Rock, and provides a penalty for any pilot speaking a vessel outside of that limit. How that is illegal it is difficult to see. It is a mere regulation as to the station of the boat from which the pilots are to board inward-bound vessels. Certainly, under the broad authority vested in the defendants, they had the power to regulate the position of the station boat and the circumstances under which and the locality at which pilots should offer their services to incoming vessels. Such a rule was necessary to secure to each incoming vessel a pilot.

The second rule is objected to by the relator, for the reason that it compels the pilot to remain on the station boat inactive, and that he should not be asked to take his turn with other pilots on the station boat. The rule endeavors to provide that there should be always pilots on the station boat, so that an incoming vessel could be sure of obtaining a pilot. The rule does not provide that a pilot should refuse to pilot an incoming vessel, if his so acting would reduce the number of pilots below three. But in such a case the pilot must immediately return to the station boat, so as to be ready to pilot other vessels. The idea that this rule requires a pilot to stay on the station boat 48 hours without piloting any vessel that wants his services is absurd. What it requires is that no pilot should be required to remain longer than 48 hours on the station boat in case his services during that time are not required.

Relator objects to rule 3 on the ground that there is no provision in law which requires the pilot to do what rule 3 requires; but, if there was such a provision of law, rule 3 would be entirely unnecessary.

Rule 4 is also objected to because that requires that disputes between any two or more pilots should be referred to the board of port wardens. The reason announced why this rule is illegal or contrary to law and in violation of the Constitution of the state of New York is not apparent. What was evidently intended by this rule was that a dispute

or controversy in relation to the performance of their duties should be determined by the board of port wardens, which is certainly a very proper rule.

Rule 6 is objected to because it states that the board of port wardens have leased a schooner, the George Temple, for a station boat. Such lease of a schooner may be illegal, but the leasing is not a part of rule 6; and we certainly cannot determine upon a writ of certiorari whether the board of port wardens violated the law in leasing a schooner. The objections show how perfectly inadequate such a writ of certiorari is to review the exercise by the board of port wardens of the discretion vested in them by the statute.

It follows that the writ must be dismissed, with $50 costs and disbursements. All concur.